SMITH ET AL., APPELLEES, *v.* HANEY, CHIEF, DIVISION OF WILDLIFE, OHIO DEPARTMENT OF NATURAL RESOURSES, APPELLANT.

[Cite as Smith v. Haney (1980), 61 Ohio St. 2d 46.]

(No. 78-1551—Decided January 9, 1980.)

---

*Rhode, Kaufman, Egger & Reno Co., L.P.A.,* and *Mr. Ronald G. Kaufman,* for appellees.

*Mr. William J. Brown,* attorney general, and *Mr. Stephen P. Samuels,* for appellant.

*Per Curiam.* The portion of the statutory licensing scheme at issue here, former Ohio Adm. Code 1501: 31-3-03 (B) provided, in pertinent part, that "[b]eginning in 1976 and thereafter, new commercial fishing applicants, except trotline applicants may, at the discretion of the chief, be granted a license provided they meet the specifications and requirements set forth in section 1533.342 of the Revised Code." Appellees contend, and the Court of Appeals agreed, that this regulation, when read alone, gives unfettered discretion to the Chief of the Division of Wildlife in granting these licenses. It is further argued that the failure to provide licensing guidelines renders this regulation unconstitutionally vague and thus void.

Regulations, however, should not be read in a vacuum but must be read with reference to the enabling statute under which they were enacted. *Mourning* v. *Family Publications Service* (1973), 411 U.S. 356, 369; *American Trucking Assns.* v. *United States* (1953), 344 U.S. 298. In this instance Ohio Adm. Code 1501:31-3-03 (B) was valid because of extensive guidelines set forth by the General Assembly in R. C. 1533.342. Under R. C. 1533.342 the Chief of the Division of Wildlife cannot act alone in establishing licensing limitations but may act only with the approval of the Wildlife Council. The statute provides that the Chief and Wildlife Council shall give consideration to:

"***the number and type of licenses needed to harvest the fish determined to be harvestable; the capacity of the boats and characteristics of the equipment owned or used by the applicant; and any other facts or data relating to the protection, preservation, management, and utilization of fish species in a biologically sound manner."

In addition, R. C. 1533.342 further provides that the Chief may require information from the applicant:

"***relating to the kind and condition of boats and fishing equipment proposed to be used by the applicant, port or ports of entry, years of commercial fishing experience, quantity and kinds of fish taken during the previous years, conviction records relating to Chapters 1531 and 1533 of the Revised Code and division orders, and such other facts as the chief of the division of wildlife determines necessary to assist him in determining whether or not the applicant may engage in commercial fishing in accordance with Chapters 1531 and 1533 of the Revised Code and division orders."

The regulation, when read in conjunction with the statute, reveals a legislative scheme adequate to safeguard against administrative capriciousness.[2]

The Court of Appeals, however, further held that the Division of Wildlife acted arbitrarily and capriciously by failing to consider the factors set forth in R. C. 1533.342. The record of the adjudicative hearing in this cause does not clearly demonstrate that these statutory factors were considered. The Division of Wildlife did not seek to offer extensive evidence concerning the limit placed on licenses, but rather concentrated on establishing that the applicant was not entitled to continued licensing under the grandfather provision of Ohio Adm. Code 1501:31-3-03 (A). This occurred because the applicants did not squarely raise an issue concerning compliance with the statutory factors in R. C. 1533.342.[3] Not until the regulation's constitutionality was challenged on appeal was this issue properly framed. While the applicants could not prove that these factors were disregarded, the burden was on them in the instant cause to raise this issue. It would be unreasonable to require the Division of Wildlife to come forth with biological data to justify the limits that they have

---

[2] The specificity requirements which must be met by a criminal statute are not required in the licensing context. *Salem* v. *Liquor Control Comm.* (1973), 34 Ohio St. 2d 244, 246.

[3] The harvestability of the fish as one of the primary factors to be taken into account pursuant to R. C. 1533.342 in determining the number and type of licenses was raised with only one witness. That individual, an enforcement supervisor with the Division of Wildlife, professed no knowledge of the considerations in this area, but instead deferred to the Chief of the division and to the division's biologist. No questions were asked the Chief of the Division of Wildlife, during his testimony at the adjudicative hearing concerning this harvestability factor.

established on new licenses when the issues raised by the applicants concerned their treatment as "renewal" applicants. When the limit on the number of licenses is raised by an applicant, the Division of Wildlife must demonstrate its compliance with R. C. 1533.342. Such was not the situation, however, in the instant cause.

We therefore hold that former Ohio Adm. Code 1501:31-3-03 (B) was not impermissibly vague, in light of the extensive guidelines established by R. C. 1533.342, and further find that the applicants have not proven that the Division of Wildlife's denial of a new license was arbitrary under that latter provision. Therefore, the license sought by the applicants should not have been issued, and the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.